IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| JEAN E. TOLUD AND DIONNE G. SINCLAIR, | ) ) ) | CASE NO. 3:19-cv-0039 |
| Plaintiffs, | ) ) | |
| v. | ) ) | ACTION FOR FRAUDULENT CONCEALMENT AND DAMAGES |
| ALEXANDER SASHA BOUIS AND TARA ANNE BOUIS, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## JOINT FINAL PRETRIAL ORDER

The following shall constitute the Joint Final Pretrial Order pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and L.R.Ci. 16.1(b) and this Final Pretrial Order shall govern the conduct of the trial of this case.

**I.     APPEARANCES**

**For the Plaintiffs:**

**Carol Ann Rich, Esq.**
**Dudley Rich LLP**
5194 Dronnigens Gade, Suite 3
St. Thomas, VI 00804

Dionne G. Sinclair, Esq.
*Pro se* and as co-counsel for Jean E. Tolud

**For the Defendant:**

**Ryan Meade**
**Quintairos, Prieto, Wood & Boyer, P.A.**
9300 S.Dadeland Blvd, 4th Floor
Miami, Florida 33156

## II.     <u>NATURE OF ACTION AND JURISDICTION OF THE COURT</u>

This is an action for fraudulent concealment and fraud in the inducement and for damages arising out of the purchase and sale Apartment No 22 Tara Way in Cowpet Bay Village-Stage Three ("Unit 22"). Plaintiffs commenced this action in the Superior Court of the Virgin Islands on April 24, 2019. Defendants removed this action to this Court on June 12, 2019, based upon diversity of citizenship.

## III.     <u>FACTUAL CONTENTIONS OF THE PLAINTIFFS</u>:

Plaintiffs commenced this action for fraudulent concealment and fraud in the inducement to recover damages suffered for the loss of use, benefit and enjoyment of the condominium they purchased from Defendants. Plaintiffs purchased Apartment No 22 Tara Way in Cowpet Bay Village-Stage Three ("Unit 22") from Defendants on June 19, 2018. Plaintiffs are married and have 3 minor children. They paid SEVEN HUNDRED EIGHTY THOUSAND DOLLARS ($780,000.00) for Unit 22. The condition of Unit 22 was a major selling point, as a majority of other Cowpet Bay East units suffered significant damage from Hurricanes Irma and Maria.

In contrast, Unit 22 appeared to suffer only minor exterior damage from the Hurricanes in 2017; overall it appeared to be in excellent condition. This was confirmed by Plaintiffs' property inspector, who confirmed that the damages to Unit 22 were mainly exterior and of limited severity, and as a result would not require extensive demolition, repair or reconstruction. The Defendants represented that Unit 22 was as it appeared.

After closing, Plaintiffs learned that the renovation plans for Cowpet Bay East Condominium called for the demolition of the entire upper floor of Unit 22 due to a latent

defect discovered in the "CMU walls." Defendants had actual knowledge of the latent defect and that major demolition and rebuilding would be required because Defendant Alexander "Sasha" Bouis was a member of the Cowpet Bay East Condominium Board of Directors. The extensive construction that followed rendered the Upper Apartment unusable and caused the entirety of Unit 22 to become a construction zone, covered in plastic sheeting, with dust permeating all of Unit 22.

Defendants are liable to Plaintiffs for damages caused by their fraudulent concealment of the latent defect. Damages include losses for Plaintiffs inability to use or rent the upstairs apartment of Unit 22 and for the lower living area of Unit 22 being barely habitable. Plaintiffs have suffered an overall loss of enjoyment of Unit 22, loss of significant income due to the inability to rent portions of Unit 22, and damages for their personal inconvenience, plus punitive damages.

**IV.     FACTUAL CONTENTIONS OF THE DEFENDANT:**

1. Plaintiffs Jean Tolud and Dionne Sinclair, citizens of the United States Virgin Islands, are both practicing attorneys in New York and the U.S. Virgin Islands.

2. Defendants Sasha and Tara Bouis are citizens of Florida. Sasha drives a boat and Tara is a stay at home mom of two girls (ages four and two).

3. On March 18, 2018 Plaintiffs presented an offer to purchase Condominium Unit 22 Tara Way, Cowpet Bay East to Defendants.

4. Plaintiffs were represented by Marni Walters & Shelley Blyth from USVI Sotheby's International Realty.

5. Defendants were represented by Rob Barringer from Sea Glass Realty.

6. The offer was drafted by the Plaintiffs and was presented on USVI Sotheby's International Realty letterhead.

7. On March 18, 2018, Defendants accepted the offer thereby creating a binding Contract. See March 18, 2010 Real Property Contract.

8. The Contract, as drafted by Plaintiffs, contained a **bolded** warning in "ALL CAPS" that cautioned "**THIS CONTRACT OF SALE BECOMES A BINDING LEGAL CONTRACT WHEN EXECUTED BY ALL PARTIES, AND EACH PARTY SHOULD READ AND UNDERSTAND ITS TERMS AND CONDITIONS**."

9. The Contract further states "Buyer or Buyer's designee shall inspect the property within 14 days of receipt of a fully executed copy of this Contract, for the purpose of inspecting the condition of the property and reviewing condominium documents. Buyer shall have forty-eight (48) hours from the end of the inspection period in which to notify or the listing Realtor in writing of Buyer's intention to cancel this Contract, with neither party having any claim against the other, except that the deposit paid hereunder shall be refunded to Buyer forthwith and in full.

10. According to the Contract terms, as drafted by the Plaintiffs', "[t]he inspection period is a time period for [Plaintiffs] to ascertain the condition of the property with the knowledge that if [Plaintiffs] proceeds with the sale, [Plaintiffs are] accepting the condition with no representations or warranties by the Seller or Realtor whatsoever, except as specifically set forth [in the Contract].

11. During the Inspection Period, Defendants provided the Plaintiffs a summary of specific reconstruction/repairs to be made by CBECOA.

12. Defendants further provided Plaintiffs the Scope of Work for Repairs for Tara Way, Building 11, Unit 22, created by Professional Engineer Paul Fererras.

13. The Contract terms, as drafted by the Plaintiffs', specifically disclaim any representations or warranties by the Seller or Realtor with respect to physical damages or defects to the property stating that "[i]n no case shall Seller, or Seller's Realtor be held responsible for damages or phys1cal defects to the property. Seller and Seller's Realtor make no personal or professional claims as to the condition of the property.

14. The Contract gave the Plaintiffs and/or their employees, independent contractors, engineers, surveyors and other representatives (collectively "Agents") the right to enter the Property at reasonable times for the purposes of performing appraisals, testing water samples, making surveys of the Property, and performing any and all other reasonable activities relating to the purchase of the Property.

15. Finally, the Contract contained an Integration Clause. The Contract drafted by the Plaintiffs "constitutes the entire agreement between the parties hereto and no representations, agreements, inducements or provisions other than those expressly set forth herein shall be binding… and shall be governed by and interpreted in accordance with the laws of the United States Virgin Islands."

**V.        ADMISSIONS AND STIPULATIONS:**

The parties have stipulated to the admissibility of the following document:

1)     22 Tara Way Executed Contract.  **Bates Nos. TS-000001 thru TS000006.**

**VI.      STATEMENT OF DAMAGES:**

**Plaintiffs:**

Plaintiffs seek damages in the total amount of **$115,500.00**, plus pre-judgment and post-judgment interest at the statutory rate, plus punitive damages in the amount of **$100,000.00**, plus reimbursement of their costs, including attorney's fees. This amount is comprised of the following amounts:

1) Loss of use and enjoyment of the full property for 8 months for both Plaintiffs in the total amount of **$48,000.00**.
   (a) $100 per person x 2 people x 30 days x 8 months = $48,000.00
2) Lost rental income for 8 months in the total amount of **$60,000.00**.
   (a) $250/night. $250 x 30 days x 8 months = $60,000.00
3) Cost to rehab upper unit in the amount of **$7,500.00.**
4) Punitive damages for Defendants' willful, deliberate, intentional fraud in the amount of **$100,000.00**.

**Defendant:**

Defendants are not seeking damages at this time. Defendants will seek an award of attorney's fees.

**VII.     AMENDMENTS TO THE PLEADINGS:**

There shall be no amendments to the pleadings.

**VIII.    STATEMENT OF ANY LEGAL ISSUES PRESENTED:**

**Plaintiffs:**

The Virgin Islands recognizes the tort of fraudulent concealment. The elements were recently set forth by the Superior Court in *Government of the United States Virgin Islands v. Takata Corp.*, 67 V.I. 316 (V.I. Super. Ct. 2017), as follows:

> (1) The defendant concealed or suppressed a material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3) the defendant knew or had reason to know that the material fact

> had been concealed or suppressed; (4) the defendant concealed or suppressed the material fact for the purpose of inducing the plaintiff to act or refrain from acting; and (5) the plaintiff suffered pecuniary loss caused by his or her justifiable reliance on the concealed or suppressed material fact.

*Id.* at 417. The extent of the duty to disclose is based upon factors such as the relationship of the parties; the relative knowledge of the parties; the value of the particular fact; the complaining party's opportunity to ascertain the fact; the customs of the particular transaction, among other relevant circumstances. *Id.* at 417-18 (*citing Armstrong Bus. Servs. V. AmSouth Bank*, 817 So. 2d 665, 677 (Ala. 2001)). In short, under Virgin Islands law, a person "who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose." The only limit upon this obligation is the question of whether Sellers, were under a duty to the Buyers to exercise reasonable care and disclose the latent structural defect. This is obvious. Every party to a contract has a duty to act in good faith and engage in fair dealing.

All of the elements of fraudulent concealment are present here. The Sellers had a duty to disclose their actual knowledge of the latent structural defect in the walls of Unit 22. Because Defendant Sasha Bouis was a member of the HOA Board of Directors, he had direct access to all of the engineering and contractor's reports and he was fully knowledgeable of the analysis of the damages throughout the condominium complex. Plaintiffs will prove that he was actually aware of the fact that the damage caused by the winds of Irma and Maria exposed structural defects in the interior support walls that were not obvious. Plaintiffs will prove that he had actual knowledge that the complete demolition and rebuilding of the upper

floor of Unit 22 would be required to resolve the structural problem.

The documents establish that Defendants failed to disclose this critical information to the Plaintiffs, thereby intentionally misleading them into believing that Unit 22 was safe for their family, and that only minor repairs would be necessary. *See* RESTATEMENT (SECOND) OF TORTS § 551(2) (b). This meets the test laid out by the Superior Court.

Defendants repeatedly threatened to file a motion for summary judgment based upon their contention that the contract provisions are a complete defense but failed to do so. The time for dispositive motions is long past. Moreover, contractual waivers are not a defense to fraud in the inducement. There is a well-recognized principle that no matter the contract language, a seller of real or personal property always has a duty to disclose actual knowledge of a latent defect, and the buyer will be entitled to recover for harm caused by the seller's failure to do so. *See, Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041, 1045–46 (Colo. 1983) ("Often a buyer is willing to accept certain deficiencies in a house in exchange for a lower purchase price. However, a buyer cannot be expected to discover structural defects which remain latent at the time of purchase."); *Johnson v. Davis*, 480 So.2d 625, 628–29 (Fla. 1985) (holding that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer. This duty is equally applicable to all forms of real property, new and used"); *Anderson v. Harper*, 622 A.2d 319, 323 (Pa. Super. 1993) (recognizing the jurisdiction's acceptance of the modern view that "where there is a serious and dangerous latent defect known to exist by the seller, then he must disclose such defect to the unknowing buyer or suffer liability for his failure to do so" (*quoting Quashnock v. Frost,*

445 A.2d 121, 125 (1982); *see also Rogers v. Virginia-Carolina Chemical Co.*, 149 F. 1, 17 (3d Cir. 1906) ("If a vendor intentionally conceals from the vendee a material latent defect in a house which he is selling, and the sale is made; or if he should say that the house was sound so far as he knew, when he knew him to be unsound, and the unsoundness consisted in a latent defect which impaired his value, he would be guilty of fraud.").

As the Florida Supreme Court explained in *Johnson*, modern jurisprudence imposes a basic duty on a seller to disclose defects of which he or she is actually aware:

> One should not be able to stand behind the impervious shield of caveat emptor and take advantage of another's ignorance. Our courts have taken great strides since the days when the judicial emphasis was on rigid rules and ancient precedents. Modern concepts of justice and fair dealing have given our courts the opportunity and latitude to change legal precepts in order to conform to society's needs. Thus, the tendency of the more recent cases has been to restrict rather than extend the doctrine of caveat emptor. The law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct demands it.

*Johnson*, 480 So.2d at 628–29.

As the court stated over 40 years ago in *Lingsch v. Savage,* 213 Cal.App.2d 729, 29 Cal.Rptr. 201 (1963):

> It is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer.

Plaintiffs object to Defendants' decision to raise the issue of judicial disqualification in the Joint Final Pretrial Order as inappropriate and inconsistent with the express terms of the Court February 10, 2021 Order requiring the parties to address the issue in a separate

filing. Defendants have refused to remove this provision.

**Defendants:**

**1.   Whether the Contract disclaims any representations or warranties and sells the Property "As Is"**

The crux of the Plaintiffs' claims centers around the allegation that Defendants were actually aware of latent structural defects in the Property, which they failed to disclose, and indeed which they allegedly concealed. Assuming arguendo that Virgin Islands law recognizes a claim for fraudulent concealment, such a claim us unavailable to the Plaintiffs herein based on the unambiguous terms of the contract.

TOLUD and SINCLAIR – themselves seasoned attorneys – drafted the Contract and assented to its terms by initialing each page and executing the entire agreement at its terminus. In the Contract TOLUD and SINCLAIRE specifically disclaim reliance on any representations or warranties by the Seller or Realtor with respect to physical damages or defects to the property stating that "[i]n no case shall Seller, or Seller's Realtor be held responsible for damages or phys1cal defects to the property. Seller and Seller's Realtor make no personal or professional claims as to the condition of the property.

Finally, the Contract contained an Integration Clause. The Contract drafted by the Plaintiffs "constitutes the entire agreement between the parties hereto and no representations, agreements, inducements or provisions other than those expressly set forth herein shall be binding… and shall be governed by and interpreted in accordance with the laws of the United States Virgin Islands."

Those clauses are a plain and unambiguous manifestation of the parties' intent. They set out in concise language the parties' understanding that the agreement as a complete and

Case: 3:19-cv-00039-RAM-RM   Document #: 66   Filed: 02/16/21   Page 11 of 18

*Tolud v. Boius*
Case No.: 3:19-cv-0039
Joint Final Pretrial Order
Page 11

exclusive statement of the contract terms. They also expressly disavow reliance on any representation or promise not set forth in the document.

In sum, (1) the parties objectively manifested an intention to be bound by the terms of the Contract and (2) the Contract "was supported by consideration on both sides" making it a valid and enforceable contract. *Castolenia* 2014 WL 239427; *accord Merchants Commercial Bank,* 2013 WL 3337286, at *2. meets the requirements for a valid contract.

### 2. Whether Plaintiffs' Claims are Barred by the Gist of the Action Doctrine and/or the Economic Loss Rule

"[T]he gist of the action doctrine bars plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract." *Addie v. Kjaer*, 51 V.I. 507, 513–15 (D.V.I. Feb. 23, 2009)(citing, *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 680 (3d Cir.2002)).

The doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contact claim or the success of which is wholly dependent on the terms of a contract. *eToll, Inc. v. Elias/Savion Adver., Inc.,* 811 A.2d 10, 19 (Pa.Super.Ct.2002) (internal citations omitted), *cited with approval in Toledo Mack Sales & Serv. v. Mack Trucks, Inc.,* 530 F.3d 204, 229 (3d Cir.2008).

Moreover, "promises made to induce a party to enter into a contract *that eventually become part of the contract* itself cannot be the basis for a fraud-in-the inducement claim under the gist of the action doctrine." *Freedom Props., L.P. v. Lansdale Warehouse Co.,* 2007 WL 2254422 (E.D.Pa. Aug. 3, 2007); *see also Bryan's Quality Plus, LLC v. Shaffer Builders, Inc.,* 2008 WL 3523935 (E.D.Pa. Aug. 12, 2008) ("Where the fraudulent misrepresentations ripen

into contractual duties, the gist of the action doctrine will apply."); *Owen J. Roberts Sch. Dist. v. HTE, Inc.,* 2003 WL 735098 (E.D.Pa. Feb.28, 2003) (concluding that a fraud claim is barred "if the fraudulent statement became the basis for a contractual duty").

The Economic Loss Doctrine also "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 671 (3d Cir.2002). "The general rule is that economic losses may not be recovered in tort (negligence) absent physical injury or property damage." *Spivack v. Berks Ridge Corp., Inc.,* 402 Pa.Super. 73, 586 A.2d 402, 405 (Pa.Super.Ct.1990). The Defendants seek only money damages in their complaint and allege no physical injury to themselves or their property. Importantly, they also claim an entitlement to that money by virtue of their contract with the Sellers. Under these circumstances, their fraudulent concealment claim is also barred by the economic loss doctrine. *See, Addie v. Kjaer*, 51 V.I. 507, 515 (D.V.I. Feb. 23, 2009)(citing as *e.g., N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc.,* 386 F.Supp.2d 648, 665 (M.D.N.C.2005) (dismissing a negligent misrepresentation claim because it related to the performance of the contract).

### 3. Whether the Court can consider Parol/Extrinsic Evidence of Fraud

The Contract is in an integrated agreement which expressly disclaims reliance on representations or promises not contained in the writing; thus, the Court cannot consider parol/extrinsic evidence of fraud. Generally, the existence of an integration clause precludes the introduction of parol evidence. *See Blackledge v. Allison,* 431 U.S. 63, 75 n.6 (1977)("The parol evidence rule has as its very purpose the exclusion of evidence designed to repudiate provisions in a written integration of contractual terms."); *Phillips v. Andrews,* 332 F.Supp.2d

797, 803 (D.V.I.2004)(stating "a writing intended as the entire understanding of the parties is then subject to the parol evidence rule which precludes consideration of extrinsic evidence of prior or contemporaneous agreements extending or altering the authority granted in a writing").

In *ABRY Partners,* the court, despite Delaware's adoption of the fraud exception, held that plaintiff, a sophisticated party, could not reasonably rely upon representations outside of the negotiated agreement, where the agreement contained a provision explicitly disclaiming reliance upon such outside representations:

> A party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a "but we did rely on those other representations" fraudulent inducement claim.... If there is a public policy interest in truthfulness, then that interest applies with more force, not less, to contractual representations of fact.
>
> To fail to enforce non-reliance clauses is not to promote a public policy against lying. Rather, it is to excuse a lie made by one contracting party in writing – the lie that it was relying only on contractual representations and that no other representations had been made – to enable it to prove that another party lied orally or in a writing outside the contract's four corners. For the plaintiff in such a situation to prove its fraudulent inducement claim, it proves itself not only a liar, but a liar in the most inexcusable of commercial circumstances: in a freely negotiated written contract. Put colloquially, this is necessarily a "Double Liar" scenario. To allow the buyer to prevail on its claim is to sanction its own fraudulent conduct.

*ABRY Partners V, L.P.,* 891 A.2d at 1057.

    **4.    Whether the Court admit non-expert, lay opinion, testimony of speculative lost rental income economic damages**

"An award for loss income requires corroboration of plaintiff's testimony. Such award cannot be based on conjecture and must be supported by something more than

plaintiffs own self-serving statements." *Franklin v. Virgin Petroleum Diamond, Inc.*, 53 V.I. 149, 152 (Super. Ct. 2010)(citing, *Connally v. Chardon*,1978 St.X. Supp. 372 D.V.I.App.1978). Courts require corroborative proof of loss of earnings and earning power. *Gordon v. Trovato,* 338 A.2d 653, 657 (Pa.Super.Ct.1975). The law requires not merely conjecture, but rather sufficient data from which the damages can be assessed with reasonable certainty. *Macan v. Scandinavia Belting Company*, 264 Pa. 384, 107 A. 750 (1919). Plaintiffs' will likely testify at trial that they anticipated renting out the property after purchase and that they expected to get $250.00 per night every single night for eight (8) months. Plaintiffs have disclosed no evidence of any income from the rental of the property prior to the eight (8) month repair period, nor any evidence of income from the renal of a portion of the property since the repairs were completed. Plaintiff have not produced tax returns or other evidence of any change in reported income from their "rental" business either prior to, or following the eight (8) month repair period. Nevertheless, Plaintiffs are claiming $60,000.00 lost rental income and will seek to introduce that without either a factual predicate or the testimony of an expert witness.

     **5.    Whether the Court admit non-expert, lay opinion, testimony as to latent defects in the CMU wall caused by the Hurricanes**

It is axiomatic that a plaintiff must prove every element of the claim… "with as much certainty as the nature of the tort and the circumstances permit." *Santana v. Mack*, 889 F. Supp. 223, 226–27 (D.V.I. 1995). Plaintiffs will seek to prove that ALEXANDER SASHA BOUIS was actually aware of the fact that the damage caused by the winds of Irma and Maria exposed structural defects in the interior support walls that were not obvious.

     Although "[a]s a general rule, lay testimony is sufficient to support a finding of

proximate cause..., [e]xpert evidence is often required to establish the causal connection between the accident and some item of physical [damage] unless the connection is a kind which would be obvious to laymen, such as a broken leg from being struck by an automobile." *Santana*, 32 V.I. at 383, *quoting* 2 Harper and James, The Law of Torts, § 20.2, pp. 1116–17. The law requires not merely conjecture, but rather sufficient data from which the damages can be assessed with reasonable certainty and the Plaintiffs have disclosed no witness who can speak as an expert as to the technical aspects of the alleged latent defect. *Macan v. Scandinavia Belting Company*, 264 Pa. 384, 107 A. 750 (1919).

IX. **LEGAL ISSUES, DEFENSES OR CLAIMS TO BE ABANDONED:**

**Plaintiffs**

None

**Defendants:**

None

X. **ADDITIONAL DISCOVERY:**

**The time for discovery has long passed.**

XI. **PLAINTIFF'S EXPERT WITNESSES:**

None

XII. **DEFENDANT'S EXPERT WITNESSES:**

None

XIII. **PLAINTIFFS' NON-EXPERT WITNESSES:**

1. Jean E. Tolud
2. Dionne G. Sinclair

      3. Marni Walters
      4. Shelley Blyth
      5. Andy LaPlace

## XIV. DEFENDANTS' NON-EXPERT WITNESSES:

1. Alexander Sasha Boius
2. Tara Ann Bouis
3. Rob Barringer
4. Paul Ferreras
5. Jean E. Tolud
6. Dionne G. Sinclair
7. Marni Walters
8. Shelley Blyth

## XV. SPECIAL PROBLEMS:

**Plaintiffs:**

Plaintiffs are unsure of how the ongoing COVID-19 emergency will impact the ability to present witnesses and evidence at trial.

**Defendants:**

Defendants believe that the ongoing COVID-19 pandemic will prejudicially impact the ability to present a complete defense, including the examination of witnesses and presentation of evidence at trial. Defendants are concerned about their ability to subpoena witnesses to a virtual location, cross examine witnesses over fluctuating bandwidth, impeach or refresh the recollection of witnesses through remote documents.

## XVI. ESTIMATED LENGTH OF TRIAL:

**Plaintiffs:**

1 day

**Defendants:**

2-3 days

## XVII.     TRIAL BRIEFS:

Shall include: (a) proposed list of witnesses; (b) proposed list of exhibits; and (c) estimated length of case-in-chief and case-in-defense and shall be filed on or before February 15, 2021 in accordance with the Courts February 10, 2021 Order [DE 46].

### CONCLUDING CERTIFICATION

WE HEREBY CERTIFY by the affixing of our signatures to this Joint Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this order prior to its submission to the Court. Further, it is acknowledged that amendments to this Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

| Attorneys for Plaintiffs: | Attorney for Defendants: |
|---|---|
| /s/ Carol Ann Rich | /s/ Ryan Meade |
| **Carol Ann Rich, Esq.** | **Ryan C. Meade, Esq.** |
| Dudley Rich, LLP | Quintairos, Prieto, Wood & Boyer, P.A. |
| 5194 Dronnigens Gade, Suite 3 | 9300 South Dadeland Blvd., 4th Floor |
| St. Thomas, VI 00802 | Miami, FL 33156 |
| Tel: (340) 776 7474 | Tel: (305) 670-1101 |
| crich@dudleylaw.com | rmeade@qpwblaw.com |

/s/ Dionne G. Sinclair
**Dionne G. Sinclair, Esq.**

Entry of the foregoing Joint Final Pretrial Order is hereby **APPROVED;** it is further

**ORDERED** that the deadline to file dispositive motions and motions *in limine* has expired; it is further

*Tolud v. Boius*
Case No.: 3:19-cv-0039
Joint Final Pretrial Order
Page 18

**ORDERED** that no amendments shall be made to the Joint Final Pretrial Order except upon approval of this Court.

**DONE AND SO ORDERED**.

**DATED:** February 16, 2021        */s/ Robert A. Molloy*
                                    **ROBERT A. MOLLOY**
                                    **District Judge**